UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

TORREY L. FRAZIER,       )
                         )
       Petitioner,        )
                         )
v.                          )      No.      3:15-CV-26-TAV-HBG
                         )
DEBRA JOHNSON,        )
                         )
       Respondent.       )

## MEMORANDUM OPINION

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by pro se prisoner Torrey L. Frazier ("Petitioner"), challenging the constitutionality of his confinement under a state court judgment of conviction of second-degree murder [Doc. 1]. On March 23, 2015, Petitioner filed an amended petition [Doc. 8]. In compliance with the Court's order, Respondent filed a response to Petitioner's amended pleading on September 1, 2016, as well as a copy of the state record [Docs. 12, 13]. Petitioner replied on November 14, 2016 [Doc. 14]. For the reasons set forth below, Petitioner's § 2254 petition [Doc. 8] will be **DENIED** and this action will be **DISMISSED**.

## I. PROCEDURAL HISTORY

Petitioner was convicted of second-degree murder and sentenced to twenty-two years' imprisonment. *State v. Frazier*, No. E2000-01364-CCA-R3CD, 2001 WL 1627601, at *1 (Tenn. Crim. App. Dec. 19, 2001). Petitioner appealed his conviction. *Id.* Discerning no reversible error, on December 19, 2001, the Tennessee Court of Criminal Appeals

("TCCA") affirmed the trial court's judgment. *Id*. at \*9. Petitioner did not file an application for permission to appeal to the Tennessee Supreme Court ("TSC").

On July 21, 2004, Petitioner, through counsel, filed an untimely petition for post-conviction relief. *Frazier v. State*, 303 S.W.3d 674, 678 (Tenn. 2010). Despite the statute of limitations issue, the State conceded that Petitioner was entitled to a delayed application for permission to appeal to the Supreme Court. *Id*. The trial court granted the delayed appeal and stayed consideration of the remaining claims in the petition. *Id*. While Petitioner was given the opportunity to file an application for permission to appeal to the TSC, the application was denied on February 21, 2006. *Id*. Following an evidentiary hearing on the remaining issues, the trial court denied relief. *Id*.

Petitioner appealed, and on March 25, 2009, the TCCA affirmed the denial of post-conviction relief. *Frazier v. State,* No. E2007–02518–CCA–R3–PC, 2009 WL 774482, at \*1, \*7 (Tenn. Crim. App. Mar. 25, 2009) *rev'd and remanded*, 303 S.W.3d 674 (Tenn. 2010). Afterward, Petitioner filed a pro se application for permission to appeal, arguing for the first time that the trial court had committed error by failing to *sua sponte* address a conflict of interest issue. *Frazie*r, 303 S.W.3d 674, 678. Petitioner claimed that the attorney that represented him in the delayed appeal should have been disqualified in the subsequent post-conviction proceeding and appeal. *Id*. Petitioner contended that he should have been advised of the potential conflict of interest in advance of the evidentiary hearing and given the opportunity to either waive the issue or insist upon substitution of counsel. *Id*. Upon learning of Petitioner's allegations, the attorney sought and received permission

to withdraw. *Id*. TSC granted permission to appeal in order to address the conflict of interest issue. *Id*.

On remand, the trial court held an evidentiary hearing, determined that the Petitioner did not knowingly and voluntarily waive retained counsel's conflict of interest, and scheduled a new post-conviction hearing. *Frazier v. State*, No. E2012-01751-CCA-R3PC, 2013 WL 5964011, at *2 (Tenn. Crim. App. Nov. 6, 2013). Following a new evidentiary hearing held on July 19, 2012, the post-conviction court denied relief and the TCCA affirmed the denial on November 6, 2013. *Id*. The TSC denied discretionary review on May 14, 2014. *Id*.

Petitioner then filed a writ of habeas corpus on January 16, 2015 [Doc. 1]. On March 23, 2016, Petitioner filed an amended writ of habeas corpus [Doc. 8]. This matter is now ripe for the Court's review.

## II. FACTUAL BACKGROUND

The facts of this case have been previously summarized by the TSC as follows:

At approximately 1:00 a.m. on December 28, 1997, Torrey Lyonel Frazier (the "petitioner") shot and killed the victim, Anthony Eugene Thomas (the "victim"), at a place known as Skinny Miller's in Roane County. The petitioner fired multiple shots at close range, one of which penetrated the stomach, right lung, and aorta of the victim. The petitioner, charged with first-degree murder, claimed self-defense. He asserted that he had been threatened by the victim as a result of a prior incident and contended that, just prior to firing his gun, he had seen the victim reach for an object with a black handle in the front portion of his pants. Attorneys Charles B. Hill II and Spence Bruner were appointed as counsel. At trial, the police offered testimony that they had found no weapons during their investigation which might have supported the petitioner's claim. Further, a practical nurse, who had performed cardiopulmonary resuscitation on the victim shortly after the shooting, had loosened the victim's clothing at the scene and had not

observed any weapon in his possession. The jury returned a verdict of second-degree murder, and the trial court imposed a sentence of twenty-two years.

*Frazier*, 303 S.W.3d 674, 677 (Tenn. 2010).

## III.    STANDARD OF REVIEW

The Court must review Petitioner's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; *Reed v. Farley*, 512 U.S. 339, 347 (1994). Congress has mandated that federal courts review state court adjudications on the merits of such claims using a "highly deferential" standard of review. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Under this deferential standard, this Court is bound to accept the state court's findings of fact as true unless a petitioner presents "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1) (providing that "a determination of a factual issue by a State court shall be presumed to be correct" unless the petitioner rebuts that presumption with clear and convincing evidence); *see Seymour v. Walker*, 224 F.3d 542, 551–52 (6th Cir. 2000). Additionally, this Court may not grant habeas relief to a state prisoner unless the state court's decision on the merits of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (defining clearly established federal law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

The standards set forth in the AEDPA are "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). Ultimately, the AEDPA's highly deferential standard requires this Court to give the rulings of the state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

## IV.    PETITIONER'S ALLEGATIONS

Petitioner's § 2254 habeas corpus petition raises six claims of ineffective assistance of counsel, one *Brady*[1] violation, and one claim of sentencing error.  Specifically, Petitioner alleges the following claims:

- Claim 1: Ineffective assistance of trial counsel for failing to "properly address the issue of the biased juror";

- Claim 2: Ineffective assistance of trial counsel for failing to offer Petitioner a meaningful defense;

- Claim 3: Ineffective assistance of trial counsel for failing to adequately represent Petitioner regarding plea offers;

- Claim 4: Ineffective assistance of trial counsel for eliciting testimony regarding Petitioner's prior felony convictions;

- Claim 5: Ineffective assistance of trial counsel for failing to object to medical examiner's trial testimony;

- Claim 6: Prosecutorial misconduct of withholding exculpatory evidence;

- Claim 7: Ineffective assistance of trial counsel for failing to object to the re-enactment and use of a tech-9 handgun at trial;

- Claim 8: Trial Court erred in the application of enhancements to Petitioner's sentence of imprisonment.

## V.    ANALYSIS

### A.    Ineffective Assistance of Counsel: Claims One through Five and Seven

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for

---

[1] *Brady v. Maryland,* 373 U.S. 83 (1963).

his defense." U.S. Const. Amend. VI. Under the Sixth Amendment, a defendant has a constitutional right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id.*

Under the first prong of the test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). A court considering counsel's performance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

The second prong requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the

error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In order to prevail on a claim of prejudice, a petitioner must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. While both prongs must be established to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

Any § 2254(d) claim reviewed under *Strickland* is "doubly deferential," affording both the state court and the defense attorney the benefit of the doubt. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Further, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

In his amended habeas petition, Petitioner asserts that his trial counsel was ineffective for: (1) failing to "properly address the issue of the biased juror"; (2) failing to offer Petitioner a meaningful defense; (3) failing to adequately represent Petitioner regarding plea offers; (4) eliciting testimony regarding Petitioner's prior felony convictions; (5) failing to object to medical examiner's trial testimony; and (6) failing to object to the re-enactment and use of a tech-9 handgun at trial [Doc. 8]. Respondent argues that the state court's rejection of Petitioner's ineffective assistance of counsel claims was

not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of fact in light of the evidence before the state court [Doc. 12 p. 11].

### 1. Claim One

Petitioner contends that trial counsel was ineffective for "failing to raise the issue of the impropriety of allowing a juror, Juror Samples, to remain with the jury despite the fact that one of Petitioner's witnesses, Terrell Gordon, was charged with assaulting that juror's son" [Doc. 8].

The TCCA addressed the issue on appeal from the denial of the post-conviction relief and rejected Petitioner's argument. The TCCA found as follows:

> The Petitioner contends that he is entitled to post-conviction relief because trial counsel failed to address during the trial the issue of a biased juror being allowed to remain on the jury. The State argues that the Petitioner has not demonstrated prejudice because the record shows that the juror was dismissed prior to jury deliberations. We conclude that the Petitioner is not entitled to relief.

> The trial record reflects that after the State rested its case-in-chief, the trial court held a bench conference and informed the parties that one of the jurors, "Ms. Samples," had informed the court that she knew one of the witnesses, Terrell Gordon. During the conference, Samples said to the parties, "I don't know Terrell Gordon, and you all didn't mention his name. But my husband has a case where my little boy, over two years ago at the ball game . . ., [accidentally] bumped into him, and Terrell Gordon turned around and busted his nose." Defense counsel advised the court that it was going to call Gordon as a witness during its case-in-chief, and the trial court informed Samples, "You need to look at his testimony and judge it the same as the others." Samples replied, "Well, I mean, I can be honest, but I wanted to be fair and say, because his name hasn't been mentioned." The trial court told Samples that "it's not anything to worry about." The bench conference concluded, and the trial court instructed the jurors to go into the jury room.

When trial resumed, six witnesses, including Gordon, testified in the Petitioner's case-in-chief, and one witness testified for the State on rebuttal. At the close of all the proof, a bench conference occurred during which the State asked the trial court, "[D]o we need to address the juror issue, about dropping that juror? We need something on record that you object or don't object to her being a juror." The State also said, "I don't know what she's going to say in the jury room about him. And I don't want any appeal issues." The State recommended that Samples be excused from the jury, the trial court agreed, and lead counsel stated, "I think that's probably the safest thing."

The Petitioner contends that trial counsel were ineffective because Samples was not removed from the jury until the close of all the proof, which gave her the opportunity to make prejudicial remarks to other jurors regarding her knowledge of Gordon and the facts surrounding his assault of her son. However, the Petitioner did not call Samples or any of the jurors who deliberated on his case to testify at the evidentiary hearing to show that Samples tainted the jury with improper comments about Gordon. Thus, we agree with the post-conviction court that the Petitioner has failed to show that he was prejudiced by any deficiency.

*Frazier*, 2013 WL 5964011, at *7.

In its response, Respondent argues that the TCCA's adjudication on this issue "was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence before the state court" [Doc. 12 p. 8]. Respondent reasoned that Petitioner failed to provide any statements by Samples demonstrating prejudice or showing that the jury was tainted by Samples' presence [*Id*.].

After a review of the record, this Court finds the following conversation took place regarding Samples' dismissal as a juror during trial.

ASST. GENERAL HARVEY: I almost forgot, do we need to address the juror issue, about dropping that one juror? We need something on the record that you object or don't object to her being a juror. I don't want an appeal issue if there's going to be one.

[DEFENSE COUNSEL]: I think the fact that the juror may or may not have concerns about a particular witness is not in itself grounds for disqualification. But I think the fact that the juror came to you and expressed that-

THE COURT: Because she knew him.

[DEFENSE COUNSEL]: Because she knew him.

ASST. GENERAL HARVEY: The concern I've got is that if the defendant-or her child, apparently the victim, I don't know what she's going to say in the jury room about him. And I don't want any appeal issues.

[DEFENSE COUNSEL]: I think that there-I don't know what you think, but-

[DEFENSE COUNSEL]: General, I think, probably under the circumstances, she should be-when the jurors go in, that she should be excused.

THE COURT: And put the first alternate in.

ASST. GENERAL HARVEY: Obviously, I think if anything, it would work to our benefit, but I don't want an appeal, and I don't want one based on something that happens, or with the ineffective assistance of counsel.

THE COURT: If you all agree on it, then, when we send them out to deliberate, we'll just take her out and replace her with the first alternate.

[DEFENSE COUNSEL]: I think that's probably the safest thing.

*Frazier*, 2009 WL 774482, at *6–7.

Later, after the closing arguments of the parties and the trial court's instructions to

the jury, the following occurred:

THE COURT: . . . When you retire to the jury room you will first select one of your members as foreman or forelady who will preside over your deliberations. When you have reached a verdict, you will return with it to this courtroom, and your foreman or forelady will deliver it to the Court. Ms. Samples, Mr. Allen, Mrs. Moore, you three just remain seated right here. The rest of the jury now, you may retire for your deliberations.

*Id.*

Then, out of the presence of the jury, the trial court informed Juror Samples:

THE COURT: Because of what you had said to me, and because of testimony of Mr. Gordon was an integral part of him getting a pistol to the defendant. We have all of us talked, and everybody agreed that we would substitute one of the alternates on there so we would not be putting you in a bad spot of having to evaluate his credibility as a witness on that. So I wanted you to understand what that was.

JUROR SAMPLES: Okay.

THE COURT: And you were in Seat Number

JUROR SAMPLES: Nine.

THE COURT: All right. Mr. Allen, you are now in Seat Number Nine. Take your place in the jury room for their deliberations.

*Id.*

This Court finds that the record supports TCCA's finding that the evidence does not undermine the post-conviction court's finding that trial counsel was not ineffective in this regard. The TCCA properly applied the legal standard set forth in *Strickland*, finding that Petitioner failed to meet his burden of showing that trial counsel's actions rose to the level of deficient, nor did he present any specific evidence to show that he was prejudice by the juror's presence during trial. The TCCA found no showing that the juror had any real bias against the witness, and, in the alternative, even if the juror was biased, the trial court removed the juror prior to deliberations. As such, Petitioner is not entitled to relief on this claim.

### 2. Claim Two

Petitioner contends that he "was not given sufficient opportunity after consultation with [trial] counsel to consider whether he wished to testify, or to give meaningful input as to the preparation of his defense" [Doc. 8 p. 13]. "Petitioner generally argues that his attorneys' visits and meetings were limited and, therefore, inadequate to be considered effective representation" [Doc. 12 p. 12].

At his post-conviction hearing, Petitioner testified that he met with lead counsel one time at the Petitioner's home the night before trial. *Frazier*, 2013 WL 5964011, at *5. The meeting lasted thirty to forty minutes, and witnesses Terrell Gordon and Christopher Williams were also present. *Id.* During the meeting, lead counsel talked with Gordon and Williams and told Petitioner that "we was going for self defense." *Id.* Petitioner did not meet with lead counsel again, never met with an investigator, and did not meet co-counsel until the morning of trial. *Id.* Petitioner reasons that if he had been able to consult with trial counsel regarding trial strategy "well before the trial," he would not have testified, and thus, the jury would not have discovered his prior felony convictions that trial counsel elicited on direct examination [Doc. 8 p. 13].

The post-conviction court discredited Petitioner's claim during the evidentiary hearing that he did not want to testify at trial [State Court Record, Attachment 27 p. 116]. The state court found no evidence that he ever voiced his desire not to testify during the trial phase to his attorneys, the trial court, or anyone else [*Id.*]. The court found this claim to be "self-serving" and "unsupported by any corroborative evidence" [*Id.*].

After review of the post-conviction evidentiary hearing on the matter, the TCCA determined that there was nothing in the record to support Petitioner's statements that he was denied opportunities to consult with his trial counsel or that the trial counsel failed to develop a strategy or defense for Petitioner's trial. *Frazier*, 2013 WL 5964011, at *5. In fact, trial counsel testified that he met with Petitioner on at least two occasions and notified Petitioner of his strategy to argue that Petitioner acted out of self-defense [State Court Record, Attachment 28 p. 7]. Petitioner's testimony at trial was consistent with that defense strategy. As such, the TCCA affirmed the post-conviction court's ruling on this issue.

Respondent argues that the TCCA's adjudication on this issue "was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence before the state court" [Doc. 12 p. 12].

This Court finds that the TCCA properly applied the *Strickland* standard in its conclusion that no evidence presented in the state court record supports a finding that trial counsel acted deficiently. "[T]he mere fact that counsel spent little time with [Petitioner] is not enough under *Strickland,* without evidence of prejudice or other defects." *Bowling v. Parker,* 344 F.3d 487, 506 (6th Cir. 2003). Petitioner failed to show that he was unable to communicate with trial counsel prior to trial. In fact, the record shows that trial counsel and Petitioner met on at least two occasions prior to trial to discuss trial strategy. Thus, this Court agrees with the TCCA's finding that Petitioner's arguments in support of this

claim fell far below the required standard of clear and convincing evidence. Based on the TCCA's proper application of the relevant law, Petitioner is not entitled to relief on this claim.

### 3. Claim Three

Next, Petitioner claims that trial counsel was ineffective for failing to apprise Petitioner of the terms of a settlement offer made by the State [Doc. 8 p. 17]. He asserts that the evidentiary hearing record shows that a plea offer may have been made, yet none was conveyed to Petitioner [*Id*. at 20].

At the post-conviction evidentiary hearing, lead counsel testified regarding plea negotiations stating that "it seems like we talked about some pleading to a second degree . . . and I, I think were trying to get them to offer some manslaughter charge." *Frazier*, 2013 WL 5964011, at \*4. However, lead counsel could not remember if the State made a plea offer. *Id*. The post-conviction court denied this issue noting that lead counsel and co-counsel both testified that they would have been open to plea offers by the State but that they did not remember the State making an offer. *Id*. The TCCA addressed the issue, agreeing with the post-conviction court's finding that nothing in the record indicates that the State made a plea offer to the defense or was even willing to negotiate with trial counsel. *Id*. at \*8. In any event, lead counsel testified that there may have been some discussions about a guilty plea to second degree murder or manslaughter, and the jury convicted the Petitioner of the former. *Id*. Thus, the Petitioner has failed to show that he was prejudiced by trial counsels' failure to enter into plea negotiations. *Id*.

Respondent argues that the TCCA's rejection of this argument "was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence before the state court" [Doc. 12 p. 14]. Respondent notes trial counsel's testimony at the post-conviction evidentiary hearing that "it is his usual practice to try to negotiate a plea for a client, and he would have done so in the Petitioner's case, although he did not have independent recollection of doing so or being approached with an offer" [Doc. 12 p. 15 (citing State Court Record Attachment 28 p. 23–24)].

Based on the evidence at hand, and taking into consideration trial counsels' testimony at the post-conviction evidentiary hearing, this Court finds that the TCCA properly applied the standard articulated in *Stickland* in determining its conclusion. Petitioner provided no specific evidence of a plea offer by the State, but merely argues that a plea offer "may have been made" [Doc. 8 p. 17]. Neither Petitioner nor trial counsel recalled any specific plea offer made by the State. The Court thus finds that the TCCA was not unreasonable in determining that Petitioner failed to prove ineffective assistance on this issue. Accordingly, Petitioner is not entitled to relief on this claim.

### 4.    Claim Four

Petitioner contends that trial counsel was ineffective "in that counsel extracted testimony from Petitioner (at trial) about his felony conviction of selling and delivering cocaine" [Doc. 8 p. 21]. Petitioner argues that trial counsel's actions "opened the door" for the State to question Petitioner about his prior drug convictions, damaging his

reputation before the jury and hurting his defense [*Id*.]. Respondent argues that Petitioner's claim is procedurally defaulted because it was not previously presented to the state courts for consideration [Doc. 12 p. 16].

Before a federal court may review a federal claim raised in a habeas petition, it must first determine whether the petitioner has exhausted the remedies available to him in state court. *See* 28 U.S.C. § 2254(b)(1). If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis of a federal habeas petition. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Here, Petitioner's claim of ineffective assistance based on trial counsel's inappropriate direct examination of Petitioner regarding past convictions was never properly raised in state court. Because Petitioner never presented this claim on direct appeal from his judgment of conviction, this claim is unexhausted and not reviewable by the Court under § 2254. Moreover, Petitioner is now precluded from raising this claims in a state post-conviction proceeding as the time for seeking such relief has long since has passed. Tenn. Code Ann. § 40-30-102(a), (b); *Seals v. State*, 23 S.W.3d 272, 276 (Tenn. 2000).

A procedural default forecloses federal habeas review, unless the petitioner can show cause to excuse the failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Liberally construing Petitioner's pleading, Petitioner asserts as cause for not including the above-mentioned claim on direct appeal that his post-conviction counsel was ineffective for failing to raise this ineffective assistance of trial counsel issue

[Doc. 8 p. 22].  The Court interprets this excuse for the procedural default as a claim of ineffective assistance of post-conviction counsel.  Ineffective assistance of state post-conviction counsel can establish cause to excuse a Tennessee prisoner's procedural default of a substantial federal habeas claim that his trial counsel was constitutionally ineffective.  *Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014).

The Supreme Court's decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) effected a change in decisional law in that it created a "narrow exception" to the general rule of *Coleman v. Thompson*, 501 U.S. 722 (1991).  The general rule from *Coleman* states that a habeas petitioner cannot use ineffective assistance of collateral review counsel as cause to excuse a procedural default.  *Coleman*, 501 U.S. at 756–57.  The *Martinez* exception, however, provides that where a state's procedural law requires claims of ineffective assistance of counsel to be raised in an initial-review collateral proceeding, a procedural default will not bar a habeas court from hearing a substantial claim of ineffective assistance of counsel, if in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.  *Martinez*, 566 U.S. at 17.  A year later, the Supreme Court expanded the *Martinez* exception to cases where a "state['s] procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of counsel on direct appeal . . . ."  *Trevino v. Thaler*, 569 U.S. 413, 428 (2013).  The Sixth Circuit subsequently ruled that this exception is applicable to Tennessee.  *See Sutton*, 745 F.3d at 795–96.

18

To successfully establish cause and prejudice under *Martinez* and *Trevino*, a petitioner must show a substantial underlying claim of ineffective assistance of trial counsel, that is, that the underlying ineffective assistance of counsel claim has some merit. *See Trevino*, 133 S. Ct. at 1918; *Martinez*, 132 S. Ct. 1318–19; *Cook v. Ryan*, 688 F.3d 598, 610 (9th Cir. 2012) (*Martinez* requires that a petitioner's claim be rooted in "a potentially legitimate claim of ineffective assistance of trial counsel"). Based on this ineffective assistance of post-conviction counsel claim, the Court is required to review but not determine whether trial counsel's acts or omissions resulted in deficient performance and in a reasonable probability of prejudice, and to determine only whether resolution of the merits of the claim would be debatable among jurists of reason and whether the issues are deserving enough to encourage further pursuit of them. *See Gunter v. Steward*, No. 2:13–CV–00010, 2014 WL 2645452, at *13 (M.D. Tenn. June 13, 2014) ("[I]n many habeas cases seeking to overcome procedural default under *Martinez,* it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*.").

The trial transcript reflects that during Petitioner's direct examination, trial counsel asked if he had been convicted of a prior felony and that Petitioner said he had been convicted of selling and delivering cocaine. *Frazier*, 2013 WL 5964011, at *8. Trial counsel then asked if Petitioner's drug habits had "anything to do with what happened that night?" and Petitioner responded "Naw." *Id*. On cross-examination, the State asked if he

actually had been convicted of three drug offenses, and the Petitioner said yes. *Id*. Thus, it appears that Petitioner's direct testimony triggered the State's questioning about his prior convictions. However, this Court finds no indication in the record that the result of the proceeding would have been different absent this one question offered by trial counsel. Given the overwhelming amount of evidence on record supporting the jury's conviction of Petitioner, the Court finds that under *Strickland* the underlying claim regarding trial counsel's actions during direct examination of Petitioner did not prejudice the outcome of the trial. As such, Petitioner is not entitled to relief on this claim.

### 5. Claim Five

Petitioner contends that trial counsel was ineffective for failing to object to medical examiner Charles Harlan's testimony regarding the victim's cause of death [Doc. 8 p 23]. Petitioner argues that had trial counsel conducted an investigation of Dr. Harlan, he would have learned of prior allegations of misconduct and been able to cross-examine the doctor about those allegations [*Id*.].

The TCCA addressed the issue on appeal and rejected Petitioner's argument. The TCCA found as follows:

> The Petitioner contends that trial counsel were ineffective for failing to object to medical examiner Charles Harlan's testimony about the victim's cause of death. The Petitioner claims that Harlan was not qualified to testify because his medical license was revoked in May 2005. The Petitioner contends that "[u]pon information and belief, Dr. Harlan came under investigations for allegations of misconduct as early as 1995" and that counsel should have learned about the allegations before the Petitioner's trial so that counsel could have cross-examined Harlan about the allegations. We disagree with the Petitioner. Nothing indicates that counsel should have known about the allegations prior to the Petitioner's July 1999 trial. In any event, the

Petitioner has failed to cite to any part of Harlan's testimony that was negligent, deceitful, or fraudulent. Therefore, the Petitioner has failed to show that he received the ineffective assistance of counsel.

*Frazier*, 2013 WL 5964011, at *11.

Respondent argues that the TCCA's adjudication on this issue "was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence before the state court" [Doc. 12 p. 18].

This Court finds that the TCCA properly applied the governing standard set forth in *Strickland*. Petitioner provided no supporting evidence to show that trial counsel was ineffective regarding Mr. Harlan's cross-examination or that he was prejudiced by Mr. Harlan's testimony in any way. Other than unrelated instances of alleged misconduct, Petitioner failed to provide any indication that Dr. Harlan's testimony in Petitioner's case was improper. Without a finding of prejudice resulting from Dr. Harlan's testimony, Petitioner has failed to satisfy the elements of *Strickland*. Petitioner is not entitled to relief on this claim.

### 6. Claim Seven

Petitioner argues that his trial counsel was ineffective for failing to object when the prosecutor placed a gun in Petitioner's hand and had him demonstrate the victim's actions prior to the shooting [Doc. 8 p. 29]. Petitioner argues that an objection was necessary because "[t]he prosecution laid no foundation for the presentation of this evidence prior to asking Petitioner . . . to conduct a physical demonstration with a large firearm that was not

connected to the offense" [*Id*. at 30]. Although trial counsel objected when the State moved the gun into evidence, Petitioner alleges that the objection was too late to undue its prejudicial effect [*Id*.]. Petitioner asserts that the probative value of putting a firearm in his hands in front of the jury, if any, was substantially outweighed by the danger of unfair prejudice [*Id*. at 31].

The TCCA addressed this claim on appeal from the denial of the post-conviction relief and rejected Petitioner's argument [Doc. 12 p. 19]. The state appellate court stated in pertinent part:

> The trial transcript reflects that during the Petitioner's direct testimony, lead counsel told the Petitioner to stand up, pretend to be the victim, and demonstrate for the jury how the victim reached into his pants for the Tech–9. On cross-examination, the State showed the Tech–9, which had been introduced into evidence for identification purposes only, to the Petitioner and asked him to show the jury how the victim had the gun "stuff[ed]" down the victim's pants. The Petitioner did as the State requested, and the State moved that the gun be introduced into evidence and passed to the jury. At that point, lead counsel objected, stating, "Your Honor, the witness has not testified that this was the gun that he saw that night." The trial court stated that "[t]his is not introduced as the gun that was there; just as a tech-nine" and overruled the objection.

> [The TCCA] addressed this issue on direct appeal, explaining,

>> In the instant case [Terrell] Gordon, the defendant's first witness, alleged that [Quincy Willis, an associate of the victim,] had handed the victim a weapon outside of Skinny Miller's. Gordon added that the weapon had looked "like a tech-nine or something." Defense counsel then began asking questions about the size of a tech-nine and whether the victim's coat had been large enough to conceal a weapon of this type. Furthermore, defense counsel returned to this topic on re-direct eliciting more specific testimony concerning the victim's hiding of the weapon. According to Gordon he saw the victim place the weapon in the back of the victim's pants under the

aforementioned jacket. This witness added that a tech-nine was not too big to carry in that manner. In view of this line of questioning, the defendant opened the door and made the tech-nine relevant; thus, this contention lacks merit.

*Torrey L. Frazier,* No. E2000–01364–CCA–R3–CD, 2001 Tenn.Crim.App. LEXIS 956, at —— 14–15, 2001 WL 1627601. In a footnote to the paragraph, the court noted,

> During cross-examination of the defendant, the prosecution produced a tech-nine. Since the defendant claimed to have seen the handle of a weapon in the victim's pants, the State asked the defendant to place the tech-nine into his pants and to draw the weapon. Through this exchange the defense raised no objection. Nevertheless, when the State asked that the weapon be passed to the jury, the defense objected because the defendant himself had not specifically claimed that a tech-nine was involved. Later the defense objected once more, this time contesting the size of a clip mentioned by the State. Though the trial court overruled both objections, it did so in the latter instance "with the instruction to the jury that this is not alleged to be the gun that was there. We're merely talking about a type of weapon."

*Id.* at *15 n. 10.

Thus, as this court stated, the Tech–9 was relevant at trial. Moreover, although the Tech–9 used during the demonstration was not the actual weapon alleged to have been present during the crime, the trial court instructed the jury to that fact. As to the prejudicial effect of the reenactment itself, whether the victim was able to conceal a gun the size of a Tech–9 in his pants was highly relevant to the Petitioner's claim of self-defense. Therefore, we see nothing improper about the State's asking the Petitioner to demonstrate for the jury how the gun was concealed in the victim's pants. *See* Tenn. R. Evid. 403 (stating that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice). The Petitioner had failed to demonstrate that counsel rendered deficient performance or that he was prejudiced by any deficiency.

*Frazier*, 2013 WL 5964011, at *9.

Respondent argues that the TCCA's adjudication on this issue "was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence before the state court" [Doc. 12 p. 19]. Respondent asserts that Petitioner failed to make any showing on the facts or law of actual deficiency of counsel or prejudice resulting therefrom that would render the TCCA's decision unreasonable [*Id*. at 21].

Based on the state court's finding that the gun was relevant at trial and beneficial to Petitioner's defense, the Court finds that the TCCA reasonably concluded that counsel was not deficient in failing to object. Further, trial counsel's failure to reference Tenn. R. Evid. 403 in his objection to the gun being entered into evidence is irrelevant because the objection has no merit. By failing to find any deficiency in trial counsel's actions regarding the reenactment with the gun, the TCCA properly rejected Petitioner's argument. Based on the TCCA's proper application of *Strickland*, this Court finds Petitioner is not entitled to relief on this claim.

### B.    *Brady* Violation: Claim Six

Petitioner contends that the prosecutor failed to disclose investigative material regarding allegations of misconduct against Dr. Harlan in violation of *Brady v. Maryland,* 373 U.S. 83 (1963) [Doc. 8 p. 27].[2] Petitioner argues that Dr. Harlan's medical license was revoked in 2005 and that he "came under investigation for misconduct as early as 1995"

---

[2] In *Brady,* the Supreme Court held that a defendant's due process rights are violated where the government withholds evidence favorable to a defendant that is "material either to guilt or to punishment." *Brady v. Maryland,* 373 U.S. 83, 87 (1963).

for numerous bad acts [Doc. 12 p. 22 (citing Doc. 8 p. 27)]. Petitioner alleges that if this information had been disclosed, trial counsel could have cross-examined Dr. Harlan regarding the alleged misconduct causing the jury to lack confidence in Dr. Harlan's credibility and return a verdict of not guilty [*Id*. at 28].

Respondent asserts that Petitioner's claim is procedurally defaulted because Petitioner has never presented a *Brady* claim for review in state court [Doc. 12 p. 22]. Respondent moves this Court to dismiss this claim based on Petitioner's failure to make a showing of cause to excuse his default or any actual prejudice resulting therefrom [*Id*.]. In the alternative, Respondent asserts that Petitioner failed to state a basis for why he believes the prosecution had allegedly failed to disclose evidence and that he failed to state what "investigative materials" were undisclosed or the "investigating agencies" which possessed the undisclosed materials [*Id*.].

A state's suppression of *Brady* evidence can constitute cause under the procedural-default doctrine. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). To demonstrate a *Brady* violation, a habeas petitioner must establish three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). A habeas petitioner demonstrates prejudice by showing that the suppressed evidence is "material." *Id*. at 282. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

*Youngblood v. West Virginia,* 547 U.S. 867, 870 (2006) (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Pennsylvania v. Ritchie,* 480 U.S. 39, 57 (1987) (internal quotation marks omitted). A petitioner who proves a *Brady* violation demonstrates cause and prejudice to excuse procedural default of the *Brady* claim. *Id.*

First, the Court finds that Petitioner has not demonstrated cause for his procedural default because he is unable to show that allegations of misconduct by Dr. Harlan were in fact suppressed by the prosecutor. Next, in determining if the information was material, the Court finds that the information Petitioner asserts as material were merely allegations against Dr. Harlan made prior to the trial. Petitioner does not cite to any part of Dr. Harlan's testimony in his own trial that was negligent, deceitful, or fraudulent. Further, the Court agrees with Respondent's argument that Petitioner's allegations on this claim are vague. Petitioner failed to state what investigative materials were undisclosed or which investigating agencies possessed the undisclosed materials. Based on the lack of substance in Petitioner's argument, Petitioner has failed to establish that the purportedly suppressed information was material. Accordingly, Petitioner has neither demonstrated a valid *Brady* claim nor excused his procedural default. Petitioner is not entitled to relief on this claim.

## C.    Improper Sentencing: Claim Eight

Petitioner contends that the trail court improperly sentenced him to twenty-two years confinement and that his post-conviction counsel failed to raise this claim on appeal [Doc. 8 p. 32]. Petitioner cites *Martinez* as cause for his failure to exhaust this claim [*Id.*

at 37]. Petitioner argues that the trial court "improperly enhanced [his] sentence by one [1] year on the judicially determined notion that he was out on bond at the time of the offense" [*Id.*]. Petitioner alleges he should have received a sentence of twenty-one years imprisonment, rather than twenty-two [*Id.*].

Respondent argues that Petitioner's claim is procedurally defaulted because it was presented solely under a state law theory on direct appeal in state court and, absent unusual circumstances, a district court should dismiss a petition filed under 28 U.S.C. § 2254 if it contains claims not fully presented to state courts under the same theory advanced in his habeas petition [Doc. 12 p. 23 (citing *O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996)].

On direct appeal, the TCCA found as follows:

Finally, the defendant avers that the trial court erred in sentencing him to serve twenty-two years. In asserting that the sentence received was too harsh, the defendant contends that "his age . . . and the circumstances of the shooting" should lead to a shorter period of confinement.

"When reviewing sentencing issues . . ., the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); *Ashby,* 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Id.*

Turning more specifically to the facts of this case, the defendant was convicted of second degree murder. Since this is an A felony, the starting point for sentencing determinations is the middle of the range. *See* Tenn. Code Ann. § 40-35-210(c). Undisputably, this defendant was a Range I offender; thus, twenty years was the mid-point against which the trial court was to balance any mitigating and enhancement factors.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. *See State v. Santiago,* 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. *Id.*

From reviewing the record, we observe that the lower court stated that it did "not find the mitigating factors to outweigh anything in this particular case." In contrast, the defendant first argues that his age should have contributed to his receiving a shorter sentence. This relates to Tennessee Code Annotated section 40-35-113(6), which states that "[t]he defendant, because of youth or old age, lacked substantial judgment in committing the offense." *Id.*

However, a defendant's chronological age is not determinative with regard to this mitigating factor. To determine whether this factor should be utilized, courts are to "consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." *State v. Robert D. Merritt, Jr.,* No. 01C01-9709-CR-00396, 1999 WL 298311, at *2 (Tenn. Crim. App. at Nashville, May 13, 1999).

The record before us notes no problem with this defendant's mental development or capacity and affirmatively indicates that he attended school into the eleventh grade. The defendant had also fathered three children, was well-acquainted with the criminal justice system, etc. While he was twenty-years-of-age at the time of the offense, our supreme court has previously held that the application of this factor to a particular twenty-year-old defendant would not be warranted. *Id.* Faced with these considerations, we agree that this factor should not result in a shorter sentence for the defendant than that received.

As noted above, the defendant also argues that the circumstances of the offense should have decreased the penalty he received. *See* Tenn. Code Ann. § 40-35-113(11). However, he cites this Court to no analogous situation in which this factor was applied, and we do not find this allegation persuasive.

With regard to enhancement factors, the trial court found two applicable. The lower court first pointed to the fact that the defendant was out on bond at the time of the offense. This determination clearly refers to the enhancement factor found in Tennessee Code Annotated section 40-35-114(13)(A) and is uncontested in the defendant's brief. However, this factor only applies when the defendant is on bond from a prior felony charge and is ultimately convicted of the prior felony. *See id.* From our reading of the record, the defendant had made bond on a misdemeanor; thus, this would not apply. Nevertheless, the trial court also found it appropriate to apply Tennessee Code Annotated section 40-35-114(1) as an enhancing factor since the court pointed to the defendant's prior cocaine and numerous misdemeanor convictions. Beyond this, the trial court could have applied the enhancement factor dealing with the defendant's "possess[ing] or employ[ing] a firearm . . . during the commission of the offense." *See* Tenn. Code Ann. 40-35-114(9).

In view of these considerations and the fact that the trial court only enhanced the defendant's sentence by two years, we find that the defendant has failed to prove that the sentence imposed is improper. This issue, therefore, also lacks merit.

*Frazier*, 2001 WL 1627601, at *7–9.

This Court finds that an allegation that a sentence has been imposed in violation of state sentencing law does not present a constitutional issue, unless the petitioner can demonstrate that the sentence was unconstitutional. *Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (assertion that sentences were aggregated under state law causing an illegal total sentence is not a cognizable habeas corpus claim); Lindsey v. Parker, No. 2:10-CV-193, 2013 WL 3834005, at *3 (E.D. Tenn. July 23, 2013) (holding that petitioner's claim that he was improperly sentenced as a Range II offender based on a prior invalid

conviction did not provide a "recognizable basis for habeas corpus relief"). Where state courts have spoken on a matter of state law, it is not the role of a federal habeas court "to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Therefore, a decision which rests entirely on state law generally is not of federal concern. *See, e.g., Swarthout v. Cooke*, 562 U.S. 216, 218 (2011) (holding claims which allege a state law error or an incorrect application of state law do not present cognizable issues for federal habeas review).

In the present case, Petitioner claims that his sentence was improperly enhanced. As stated above, claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence was unconstitutional or wholly unauthorized by law. *See Howard v. White*, 76 F. App'x. 52, 53 (6th Cir. 2003). Here, Petitioner fails to assert any federal constitutional violation before the state court. Accordingly, Petitioner fails to overcome the statutory presumption that the trial court's sentencing determination was correct. Petitioner's challenge to his sentence is not cognizable in a federal habeas corpus proceeding. Petitioner is thus not entitled to relief on this claim.

## VI.     CONCLUSION

For the reasons set forth above, Petitioner's § 2254 petition [Doc. 8] will be **DENIED** and this action will be **DISMISSED**.

## VII.     CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal.  Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right.  *See Miller-El*, 537 U.S. at 327, 336; *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims. First, as to the procedurally defaulted claims, jurists of reason would not debate the Court's finding that the claims are procedurally defaulted.  Further, in view of the law upon which the dismissal on the merits of the adjudicated sub-claim is based, reasonable jurists could not disagree with the correctness of the Court's resolution of this claim.  Because the Court's assessment of Petitioner's claims could not be debated by reasonable jurists, such claims

are inadequate to deserve further consideration, and the Court will **DENY** issuance of a

COA.  *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 327.

A SEPARATE JUDGMENT ORDER WILL ISSUE.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE